J-S02013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LASTASHA SERRANO, | |
| Appellant | No. 3405 EDA 2014 |

Appeal from the Judgment of Sentence August 6, 2014
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0004624-2013

BEFORE:  SHOGAN, LAZARUS, and STABILE, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED MARCH 15, 2016**

Appellant, Lastasha Serrano, appeals from the judgment of sentence entered on August 6, 2014, in the Lehigh County Court of Common Pleas. After careful consideration, we affirm in part and vacate in part.

The trial court set forth the relevant facts of this case as follows:

> On September 28, 2013, at approximately 3:00 p.m., [seventy-seven-year-old] Margaret Weber was inside her home in Bethlehem watching the Lehigh vs. New Hampshire football game. Ms. Weber retired from Lehigh University after working there for thirty-five (35) years, and had been an "administrator office manager in career services". She was widowed in 2011 and lived by herself.
>
> Prior to her husband's death, he had suffered from multiple sclerosis, and caregivers from Aaron Healthcare would come to their home and provide him with assistance. One of the homecare workers for Mr. Weber was the appellant. During the "lunch shift" she would be at the Weber household, and on occasion, Ms. Weber and the appellant would talk. The appellant's tenure at the Weber home ended on a sour note,

when Aaron Healthcare was contacted in 2011, and they were asked not to send the appellant to the Weber home.

While watching the football game, Ms. Weber responded to the ring of the doorbell, and when she opened the door, a woman wearing either a dark blue or black hoodie with sunglasses was at the door. Ms. Weber did not initially recognize that it was the appellant, but permitted her inside her home to use the telephone. She told Ms. Weber that she was at the apartment complex to visit her aunt who had cancer, and that her car had broken down. Ms. Weber showed her to the wall phone in the dining room, and the appellant supposedly made a series of phone calls. She remained in Ms. Weber's home for approximately forty-five (45) minutes, and during that time, Ms. Weber observed her and spoke with her. Eventually, Ms. Weber became suspicious and attempted to escort her from her home. At the same time, Ms. Weber also began to realize that there was something familiar about this woman, but she was still unable to jog her memory.

They walked down the hallway together, and as they neared the doorway, the appellant turned around and faced Ms. Weber. It was at that moment that Ms. Weber realized that this woman was a "caregiver for my husband". Moments later, the appellant pepper sprayed Ms. Weber, and then shoved her to the floor. Ms. Weber tried to get up, but the appellant hit her over the head with a potted plant, and then with two vases. Ms. Weber "kept fighting because I felt like I was fighting for my life".

Ms. Weber continued to fight for what she believed was ten (10) to fifteen (15) minutes, but then submitted to her attacker. She asked what the appellant wanted, and was told $2,000.00. Ms. Weber told her that her purse and an envelope with money were in her bedroom, and without direction, the appellant started down the hallway to the bedroom.

While she did so, Ms. Weber tried to grab the telephone in the dining room. The appellant must have seen her do so, because she returned and pulled the telephone off the wall. She then dragged Ms. Weber into the bedroom, and Ms. Weber showed her where her purse and the envelope were located. The appellant removed approximately $600 in cash, as well as jewelry valued at $1,600. A few minutes later, the appellant fled

out the back door with money, jewelry, and the telephone she had ripped from the wall.

Ms. Weber then locked all the doors and called 9-1-1. She told the 9-1-1 operator that her attacker was a "healthcare worker". Officer Dwight Schaffner of the Bethlehem Police Department responded to Ms. Weber's home, and discovered her "bleeding heavily from the head area". He also detected a smell of pepper spray in her residence. Ms. Weber was upset, but in the words of Officer Schaffner, she was "calm upset ... she was ... very strong". She was able to describe her attacker as a Hispanic female, approximately 5'5" - 5'6" who was wearing large sunglasses and a black hoodie. She was also able to tell Officer Schaffner that her attacker had worked for Aaron Healthcare and helped care for her husband.

Officer Schaffner described the scene as "pretty trashed", and it was obvious to him that there was a struggle inside the home. Items were broken, and he observed blood in several locations in the home. Ms. Weber was transported to St. Luke's Hospital.

Detective Fabian Martinez, who is assigned to the Criminal Investigations Division of the Bethlehem Police Department, responded to St. Luke's Hospital to interview Ms. Weber. She was located on a stretcher still "bleeding from the head, from the back of her ear. She was all bruised up, very shaken, very upset."

She told Detective Martinez that she recognized the person who attacked her as someone who was a "caregiver for her late ex-husband who used to work for Aaron Healthcare Services". She added that it was the "same female that took care of her husband back in 2011 . . . the same female they had had some issues with while she was being a caretaker".

Detective Martinez spoke with representatives from Aaron Healthcare and provided them with the information he acquired from Ms. Weber. He developed the appellant as a suspect, and secured her photograph. He presented that photograph to Ms. Weber who positively identified the appellant as her attacker. On October 1, 2013, the appellant was arrested at her residence and in her possession was a "canister of Mace pepper spray".

Ms. Weber was treated at St. Luke's Hospital and needed seven staples to close the wound to her head and five staples to suture the wound behind her ear. She also suffered a rotator cuff tear, which required months of physical therapy, and multiple bruises all over her body. She testified that she had four and a half (4½) months of "rehab", three (3) times per day, and a total of fifty-two (52) sessions. At the time of trial, her condition was dramatically improved.

Trial Court Opinion, 2/23/15, at 2-6 (footnotes omitted).

On May 21, 2014, a jury found Appellant guilty of two counts of robbery, two counts of aggravated assault, and one count of theft by unlawful taking or disposition. A presentence investigation report ("PSI") was ordered, and the trial court reviewed the PSI prior to imposing sentence on August 6, 2014. The trial court sentenced Appellant to a term of fifty-four to 120 months in prison at count one, robbery, and to a consecutive term of fifty-four to 120 months in prison at count three, aggravated assault. The remaining robbery and theft charges, at counts two and five respectively, merged with count one for sentencing purposes. The remaining charge of aggravated assault at count four merged with the sentence at count three for purposes of sentencing. Thus, Appellant received an aggregated sentence of nine to twenty years in a state correctional institution.

On August 14, 2014, Appellant filed timely post-sentence motions, which the trial court denied in an order filed on November 25, 2014. This timely appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Appellant raises three issues for this Court's consideration:

[A]. Whether the Trial Court erred in failing to determine that the evidence at trial was insufficient to sustain the jury's verdict of guilty to Aggravated Assault, attempt to cause serious bodily injury to the victim under 18 Pa.C.S.A. §2702(a)(1).

B. Whether the Trial Court erred in failing to suppress the victim's out-of-court and subsequently the in-court identification of the Appellant where only one photograph was exhibited to the victim?

[C]. Whether the Trial Court's sentence of 9 to 20 years in a State Correctional Institute was manifestly excessive and unreasonable under the circumstances?

Appellant's Brief at 6.[1]

_____

[1] We have renumbered Appellant's issues for purposes of our discussion. When an appellant raises both a sufficiency-of-the-evidence issue and a suppression issue, we address the sufficiency of the evidence supporting the conviction first, and we do so without a diminished record:

We are called upon to consider all of the testimony that was presented to the jury during the trial, without consideration as to the **admissibility of that evidence**. The question of sufficiency is not assessed upon a diminished record. Where improperly admitted evidence has been allowed to be considered by the jury, its subsequent deletion does not justify a finding of insufficient evidence. The remedy in such a case is the grant of a new trial.

*Commonwealth v. Stanford*, 863 A.2d 428, 431–432 (Pa. 2004) (emphasis in original). Thus, we address Appellant's issues in reverse order and begin by addressing the sufficiency of the evidence, as "[t]he Double Jeopardy Clause bars retrial after a defendant's conviction has been overturned because of insufficient evidence." *Commonwealth v. Mullins*, 918 A.2d 82, 85 (Pa. 2007) (citations omitted).

In her first issue on appeal, Appellant argues that the evidence was insufficient to sustain the guilty verdict with respect to her conviction of aggravated assault, attempt to cause serious bodily injury to the victim, under 18 Pa.C.S. § 2702(a)(1). Appellant's claim is meritless.

Our standard of review for a sufficiency claim is well settled:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Mobley***, 14 A.3d 887, 889-890 (Pa. Super. 2011).

Appellant was convicted of aggravated assault under 18 Pa.C.S. § 2702(a)(1), which provides as follows:

**Aggravated assault**

**(a) Offense defined.**--A person is guilty of aggravated assault if he:

> (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances

> manifesting extreme indifference to the value of human life;

18 Pa.C.S. § 2702(a)(1). "Serious bodily injury" is defined as:

> Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

18 Pa.C.S. § 2301. "For aggravated assault purposes, an 'attempt' is found where the accused, with the required specific intent, acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." *Commonwealth v. Martuscelli*, 54 A.3d 940, 948 (Pa. Super. 2012).

> Where the victim does not suffer serious bodily injury, the charge of aggravated assault can be supported only if the evidence supports a finding of an attempt to cause such injury. A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime. An attempt under Subsection 2702(a)(1) requires some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury. A person acts intentionally with respect to a material element of an offense when ... it is his conscious object to engage in conduct of that nature or to cause such a result. As intent is a subjective frame of mind, it is of necessity difficult of direct proof. The intent to cause serious bodily injury may be proven by direct or circumstantial evidence.

*Martuscelli*, 54 A.3d at 948 (internal citations and quotation marks omitted).

Here, the testimony at trial established that Appellant sprayed seventy-seven-year-old Ms. Weber repeatedly with pepper spray, threw Ms. Weber to the floor, beat her over the head with a potted plant, and then

smashed two vases over Ms. Weber's head. N.T., Trial, 5/20/14, at 68-72. It was only when Ms. Weber surrendered and asked what Appellant wanted from her that Appellant relented in her attack. *Id*. at 72. Ms. Weber required seven staples to close a wound on her head and five staples to close a wound behind her ear. *Id*. at 83. Additionally, Ms. Weber also sustained a torn rotator cuff. *Id*. at 71. As the trial court explained, "[Appellant] may not have caused serious bodily injury, but she took a substantial step toward doing so." Trial Court Opinion, 2/23/15, at 14. We agree. Appellant's ruthless assault on Ms. Weber illustrated her intent to cause serious bodily injury, and we conclude the evidence was sufficient to sustain the conviction.

Next, Appellant avers that the trial court erred in failing to suppress the victim's identification of Appellant. We disagree. The standard of review we apply in addressing a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. *Commonwealth v. Armstrong*, 74 A.3d 228, 238 (Pa. Super. 2013) (citation omitted).

> In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable. The purpose of a "one on one" identification is to enhance reliability by reducing the time elapsed after the commission of the crime. Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such

evidence and will not warrant exclusion absent other factors. **As this Court has explained, the following factors are to be considered in determining the propriety of admitting identification evidence: the opportunity of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation.** The corrupting effect of the suggestive identification, if any, must be weighed against these factors. Absent some special element of unfairness, a prompt "one on one" identification is not so suggestive as to give rise to an irreparable likelihood of misidentification.

*Commonwealth v. Moye*, 836 A.2d 973, 976 (Pa. Super. 2003), *appeal denied*, 578 Pa. 694, 851 A.2d 142 (2004) (citations omitted); *see id*. at 977–78 (affirming conviction based on victim's one-on-one, crime-scene identification of appellant viewed alone in police van, wearing handcuffs, where police said "'they had someone' for her to identify and had 'found him running down the street all sweaty and just tired looking'").

*Armstrong*, 74 A.3d at 238 (emphasis added).

In her brief on appeal, Appellant notes that Detective Fabian Martinez interviewed Ms. Weber in the hospital. Appellant's Brief at 24. During that interview, Ms. Weber told the detective that she remembered her late husband suspected that one of the caregivers from Aaron Healthcare was stealing, and he had her terminated in 2011. *Id*. Ms. Weber told the detective that the person from Aaron Healthcare was the perpetrator, and Detective Martinez contacted Aaron Healthcare and determined that the person suspected of theft was Appellant. *Id*. at 24-25. On September 30, 2013, nearly two years after Appellant was terminated from her employ at

Ms. Weber's home and two days after the robbery, Detective Martinez showed Ms. Weber a single photograph of Appellant, and Ms. Weber positively identified Appellant as her attacker. *Id*. at 25. Appellant argues that Ms. Weber's late husband had numerous caregivers, and the presentation of a single photograph was unduly prejudicial. *Id*. Moreover, Appellant argues that showing a single photograph to a witness is strongly disapproved of by the federal and state courts. Appellant's Brief at 25 (citing *Commonwealth v. Bradford*, 451 A.2d 1035 (Pa. Super. 1982) and *Manson v. Brathwaite*, 432 U.S. 98 (1977)).

We conclude the cases cited by Appellant are inapposite. In *Bradford*, the police showed a robbery victim and an eyewitness to that robbery a single photograph of the appellant, and both individuals identified the person in the photograph as the perpetrator. Similarly, in *Manson*, Trooper Jimmy Glover, a Connecticut state trooper, made an undercover purchase of narcotics from a man at an apartment building. After the purchase, Trooper Glover described the seller of the narcotics to another officer. After hearing the description, the officer retrieved a photograph of an individual he believed Trooper Glover described. When Trooper Glover viewed the photograph, he confirmed that the individual in the photograph

was the man who had sold the narcotics. However, in both of these cases, the perpetrator was a stranger to the witnesses.[2]

In the case at bar, Ms. Weber knew her attacker. The trial court addressed Appellant's claim of error in relevant part as follows:

> [Appellant's] arguments, once again, overlook Ms. Weber's familiarity with the appellant, and her ability to point law enforcement in the right direction prior to the presentation of the photograph. The appellant was someone who had been in her home, and with whom Ms. Weber had interacted on multiple occasions. Furthermore, on the day of the attack, Ms. Weber had the opportunity to see and hear the appellant for over an hour. The identification was not inhibited by the lighting conditions or anything other than the appellant's attempt to conceal her identity. It is also evident that the appellant was not wearing a mask or some other disguise that would completely obscure her features. If she did, Ms. Weber would never have allowed her inside her residence. It was at best a modest attempt to avoid identification. Moreover, Ms. Weber, according to Detective Martinez, told the initial responding officer that the sunglasses and hoodie came off during the attack.
>
> The totality of the circumstances demonstrates that Ms. Weber's identification was reliable and not subject to suppression. . . .
>
> * * *
>
> Here, Ms. Weber was able to provide all of the identification details to the police with the exception of the appellant's name. ***Commonwealth v. Small***, 741 A.2d 666, 679

---

[2] Moreover, we note that this Court in ***Bradford*** concluded that even though the single-photograph identification was suggestive, under the totality of the circumstances, the in-court identification was permissible. ***Bradford***, 451 A.2d at 1038. Additionally, the United States Supreme Court in ***Manson*** held that while a photo array may have been a better method by which to obtain an identification, under the totality of the circumstances, the identification was admissible. ***Manson***, 432 U.S. at 117.

(Pa. 1999) (Witnesses acquaintance with defendant prior to the commission of the crime provided "independent corroboration that the in-court identification was not tainted."). She was able to view the appellant throughout her ordeal which lasted over an hour. Her interaction with the appellant was face to face, and Ms. Weber had to pay attention to the appellant to comply with her demands. Ms. Weber is 100% certain that the appellant attacked her.

No basis exists to suppress Ms. Weber's identification.

Trial Court Opinion, 2/23/15, at 16-18.

We agree with the trial court's analysis. As noted above, Appellant had worked in Ms. Weber's home. Indeed, Ms. Weber identified her attacker as an Aaron Healthcare worker when she called 9-1-1. Significantly, Ms. Weber informed the investigating officers that her attacker was an Aaron Healthcare worker who had been terminated. Subsequently, when Ms. Weber viewed Appellant's photograph, she confirmed that Appellant was the assailant. Under the totality of the circumstances, we conclude that there was no error in the trial court denying Appellant's motion to suppress.

Next, Appellant avers that the trial court imposed a manifestly excessive and unreasonable sentence of nine to twenty years of incarceration. This issue presents a challenge to the discretionary aspects of her sentence. A challenge to the discretionary aspects of a sentence is a petition for permission to appeal, as the right to pursue such a claim is not absolute. *Commonwealth v. Treadway*, 104 A.3d 597, 599 (Pa. Super. 2014). Before this Court may review the merits of a challenge to the

discretionary aspects of a sentence, we must engage in the following four-pronged analysis:

> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b).

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010) (citing ***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006)).

We note that Appellant has met the first three parts of the four-prong test required prior to our review of the merits of a discretionary challenge to a sentence: Appellant filed a timely appeal; Appellant preserved the issue in a post-sentence motion; and Appellant included a statement pursuant to Pa.R.A.P. 2119(f) in her brief. Thus, we assess whether Appellant has raised a substantial question.

A determination as to whether a substantial question exists is made on a case-by-case basis. ***Commonwealth v. Sierra***, 752 A.2d 910 (Pa. Super. 2000). This Court will grant the appeal "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Id.*** at 912–913.

Appellant claims that the sentence imposed was unduly harsh, unreasonable, and excessive under the circumstances. Appellant's Brief at 17. Appellant states that the trial court placed undue emphasis on the victim's age and her injuries, and it failed to adequately weigh other mitigating factors and relied too heavily on the impact on the victim as opposed to the protection of the public or the rehabilitative needs of Appellant. *Id*. "Additionally, by imposing consecutive sentences for the Robbery and Aggravated Assault offenses, along with imposing each sentence at the highest end of the Standard Range, the aggregate effect of the sentence is clearly excessive and unreasonable." *Id*. (internal quotation marks omitted).

We first note that "[a]n averment that the court sentenced based solely on the seriousness of the offense and failed to consider all relevant factors raises a substantial question." *Commonwealth v. Bricker*, 41 A.3d 872, 875 (Pa. Super. 2012) (citation omitted). Additionally, "a sentencing court's failure to consider mitigating factors raises a substantial question." *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014). Therefore, we will review the merits of Appellant's challenge.[3]

Our standard of review in appeals of sentencing is well settled:

_____

[3] Appellant's claim that the sentence is excessive based on the consecutive nature of the terms of incarceration imposed will be discussed below.

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Mann*, 957 A.2d 746, 749 (Pa. Super. 2008).

A sentencing judge has broad discretion in determining a reasonable penalty, and this Court accords the sentencing court great deference, as it is the sentencing court that is in the best position to view the defendant's character, displays of remorse, defiance, or indifference and the overall effect and nature of the crime. *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007) (quotations and citations omitted).[4] When imposing a

_____

[4] The *Walls* Court instructed the following:

In making this "unreasonableness" inquiry, the General Assembly has set forth four factors that an appellate court is to consider:

(d) Review of the record.—In reviewing the record the appellate court shall have regard for:

(1) The nature of the circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any pre-sentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

*(Footnote Continued Next Page)*

sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). As we have stated, "[A] court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002). In particular, the sentencing court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation. *Id*.

As noted above, in the case at bar, the trial court had the benefit of a PSI. "Our Supreme Court has determined that where the trial court is informed by a [PSI], it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citation omitted). "The sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the [PSI]; thus properly considering and weighing all relevant factors." *Id*. (citing *Commonwealth v. Fowler*, 893 A.2d 758, 766-767 (Pa. Super. 2006)).

_(Footnote Continued)_ ————————

42 Pa.C.S. § 9781(d).

*Walls*, 926 A.2d at 963.

Here, the sentencing court addressed this issue, in relevant part, as follows:

> Here, the appellant received standard range sentences for both the Robbery and Aggravated Assault offenses.[28] Both offenses were felonies of the first degree and carried a statutory maximum of twenty (20) years. If the statutory maximum was imposed individually, the appellant potentially faced a sentence of ten (10) to twenty (20) years, and if imposed consecutively, twenty (20) to forty (40) years. All of the remaining charges were treated as merged. Additionally, the appellant entered a guilty plea on the date of sentencing to Theft by Unlawful Taking, a felony of the third degree in a separate, but similar case.[29] The sentence in that case, pursuant to a plea agreement, was ordered to run concurrently with this case.
>
> [28] The standard range with the deadly weapon enhancement for both the Robbery and Aggravated Assault charges, which were felonies of the first degree, was forty (40) months to fifty-four (54) months.[5]

_____

[5] In ***Alleyne v. United States***, ___ U.S. ___, 133 S.Ct. 2151 (2013), the United States Supreme Court held that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." ***Id***. at 2155. ***Alleyne***, however, does not apply the deadly weapon enhancement present in our Sentencing Guidelines at 204 Pa.Code § 303.17.

> ***Alleyne*** and [***Apprendi v. New Jersey***, 530 U.S. 466 (2000)], dealt with factors that either increased the mandatory minimum sentence or increased the prescribed sentencing range beyond the statutory maximum, respectively. Our case does not involve either situation; instead, we are dealing with a **sentencing enhancement**. If the enhancement applies, the sentencing court is required to raise the standard guideline range; however, the court retains the discretion to sentence outside the guideline range. Therefore, neither of the situations addressed in ***Alleyne*** and ***Apprendi*** are implicated.

*(Footnote Continued Next Page)*

[29] See Commonwealth v. Serrano, No. CR-4795-2013 (C.P. Lehigh 2013). The appellant in this case was employed as a health care worker when she entered the victim's bedroom and stole jewelry.

Trial Court Opinion, 2/23/15, at 7-8. The trial court continued:

A review of the sentencing proceedings reflects this Court's awareness and consideration of the Sentencing Guidelines, and the sentence imposed was within the standard range of the guidelines. The guidelines themselves are advisory and nonbinding, but the sentencing court must consider them in formulating a sentence. Walls, 926 A.2d at 964. The purpose of the guidelines was explained in Walls as follows:

Consultation of the guidelines will assist in avoiding excessive sentences and further the goal of the guidelines, viz., increased uniformity, certainty, and fairness in sentencing. Guidelines serve the laudatory role of aiding and enhancing the judicial exercise of judgment regarding case-specific sentencing. Guidelines may help frame the exercise of judgment by the court in imposing a sentence. Therefore, based upon the above, we reaffirm that the guidelines have no binding effect, create no presumption in sentencing, and do not predominate over other sentencing factors - they are advisory guideposts that are valuable, may provide an essential starting point, and that must be respected and considered; they recommend, however, rather than require a particular sentence.

Walls, 926 A.2d at 964-965.

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

**Commonwealth v. Buterbaugh**, 91 A.3d 1247, 1270 n.10 (Pa. Super. 2014) (*en banc*), *appeal denied*, 104 A.3d 1 (Pa. 2014); and **see Commonwealth v. Ali**, 112 A.3d 1210, 1226 (Pa. Super. 2015) (stating that "enhancements only direct a sentencing court to consider a different range of **potential** minimum sentences, while preserving a trial court's discretion to fashion an individual sentence.") (emphasis in original).

This Court also considered the [PSI]. See Commonwealth v. Rhoades, 8 A.3d 912, 919 (Pa.Super. 2010); see also Commonwealth v. Moury, 992 A.2d at 171 (Pa.Super. 2010) (holding that where the sentencing court had the benefit of a presentence investigation report it is assumed that the sentencing court was aware of relevant information regarding the defendant's character and weighed those factors along with mitigating statutory factors.); Commonwealth v. Devers, 546 A.2d 12, 18 (Pa. 1988); Commonwealth v. Pollard, 832 A.2d 517, 526 (Pa.Super. 2003). A review of the sentencing proceeding demonstrates that not only was the [PSI] scrutinized, but all the facts and circumstances were considered in imposing appellant's sentence. In other words, in reaching the sentencing decision, "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant" and the Sentencing Guidelines were all evaluated. 42 Pa.C.S. § 9721(b); Commonwealth v. Feucht, 955 A.2d 377, 383 (Pa.Super. 2008).

Here, the appellant's drug use escalated, as did the severity of her crimes, culminating in acts of violence towards Ms. Weber. It is apparent that the Robbery was pre-planned, as was the use of the pepper-spray, which was designed to disable Ms. Weber. The appellant, however, did far more than was necessary towards a vulnerable victim to accomplish her criminal goals. Cracking ["]two heavy ceramic vases and a potted plant" over Ms. Weber's head, not only resulted in a total of twelve (12) staples, but also traumatized her. Ms. Weber used to have "no fear", but now "feels afraid when the doorbell rings ... and is always looking over her shoulder ... when going out ...." The sentence imposed on [Appellant] was not an abuse of discretion.

Trial Court Opinion, 2/23/15, at 11-12 (footnote omitted).

After review, we discern no abuse of discretion. As this Court previously stated, when the record conclusively establishes that the sentencing court was fully informed of all the mitigating factors:

We presume that the court, which was in possession of those facts, applied them . . . . The sentencing court merely chose not

- 19 -

to give the mitigating factors as much weight as Appellant would have liked and decided that the facts did not warrant imposition of a sentence lower than the standard range. We cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court.

*Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa. Super. 2009).

Here, the trial court heard the testimony from the witnesses, reviewed the PSI, had the opportunity to evaluate the remorse expressed by Appellant, and carefully articulated its reasons for the sentence imposed. Accordingly, Appellant's claim that the trial court focused on the severity of the crime and failed to consider all mitigating factors is without merit; we will not re-weigh those factors and impose our judgment in the place of the sentencing court. *Macias*, 968 A.2d at 778.

Appellant also claims that the court abused its discretion by sentencing her to consecutive terms of incarceration. Appellant's Brief at 24. However, bald claims of excessiveness based on the consecutive nature of sentences do not present a substantial question. *Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa. Super. 2013). "Generally, Pennsylvania law 'affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question.'" *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa. Super. 2011) (quoting *Commonwealth v. Pass*, 914 A.2d 442, 446–447 (Pa. Super. 2006)); 42 Pa.C.S. § 9721.

"[T]he key to resolving the preliminary substantial question inquiry is whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case." **Commonwealth v. Gonzalez-Dejusus**, 994 A.2d 595, 598-599 (Pa. Super. 2010).

Here, Appellant planned a robbery at a home in which she formerly served as a healthcare worker, armed herself with pepper spray, utilized subterfuge to gain entrance, brutally assaulted Ms. Weber, and stole money and jewelry. The scheme and viciousness of Appellant's actions in conjunction with the injuries caused in the commission of Appellant's crimes were considered by the trial court along with Appellant's drug use and other relevant factors. Following our review, we conclude that Appellant's aggregated sentence is not excessive under the facts of this case. Accordingly, we find that Appellant's challenge to the consecutive nature of her sentences fails to raise a substantial question.

However, even if Appellant had raised a substantial question, we would find that her claim lacks merit. We would not conclude that the imposition of consecutive sentences was an abuse of discretion given the nature of Appellant's actions, and she was not entitled to a "volume discount" on her separate criminal acts. **Commonwealth v. Hoag**, 665 A.2d 1212, 1214 (Pa. Super. 1995). Thus, even if Appellant raised a substantial question, we would still conclude that no relief is due.

Finally, we note that in imposing sentence, at each count, the trial court ordered that Appellant was to have no contact with the victim. Because the trial court sentenced Appellant to a maximum term of incarceration of more than two years, if Appellant is granted parole, she would be under the supervision of the Pennsylvania Board of Probation and Parole. 61 P.S. § 331.17; **Commonwealth v. Mears**, 972 A.2d 1210, 1212 (Pa. Super. 2009). Thus, to the extent that the trial court's "no contact" order may be construed as a condition of parole, we are constrained to point out that the trial court was without jurisdiction to impose such a restriction.[6] Any parole conditions will be under the jurisdiction of the Pennsylvania Board of Probation and Parole. **Mears**, 972 A.2d at 1212. Therefore, any condition the trial court purported to attach to Appellant's state-supervised parole is vacated. **See Commonwealth v. Coulverson**, 34 A.3d 135 (Pa. Super. 2011) (holding that the trial court had no authority to impose "no contact" restrictions if the defendant were released on parole because such a restriction was left to the Pennsylvania Board of Probation and Parole, and conditions imposed by the trial court were advisory only).

---

[6] Neither party raised this issue. However, because questions concerning a trial court's authority to impose a particular sentence implicate the legality of the sentence, the issue cannot be waived, and we may address the issue *sua sponte*. **Mears**, 972 A.2d at 1211; **Commonwealth v. Mosley**, 114 A.3d 1072, 1087 (Pa. Super. 2015).

For the reasons set forth above, Appellant is entitled to no relief on any of the issues she raised. The judgment of sentence is affirmed in all respects except for the "no contact" provisions which, insofar as they were conditions of parole, the trial court had no authority to impose.

Judgment of sentence affirmed in part and vacated in part. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/15/2016